IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TERRY JAMES,                          §
                                      §
          Plaintiff,                  §
                                      §          Civil Action No. 3:04-CV-1944-L
v.                                    §
                                      §
COMMISSIONER OF SOCIAL SECURITY,      §
                                      §
          Defendant.                  §

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and an Order of the Court in implementation thereof, subject cause has been referred to the United States Magistrate Judge. Before this Court are *Plaintiff's Motion for Summary Judgment*, filed January 26, 2006, *Commissioner's Motion for Summary Judgment* and *Defendant's Response to Plaintiff's Motion for Summary Judgment and Memorandum in Support of Motion for Summary Judgment*, filed March 2, 2005, and *Plaintiff's Response to Defendant's Motion for Summary Judgment*, filed April 19, 2005. Having reviewed the evidence of the parties in connection with the pleadings, the undersigned recommends that the decision of the Commissioner be **AFFIRMED**.

## I.    BACKGROUND[1]

### A.    *Procedural History*

Terry James ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his claim for disability benefits under Titles II and XVI of the Social Security Act. On December 21, 2001, Plaintiff filed applications for disability

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

insurance benefits under Title II of the Social Security Act and for Supplemental Security Income under Title XVI of the Social Security Act.  (Tr. at 70-72.)  Plaintiff claimed he was disabled due to severe neck, shoulder, and back pain.  (Tr. at 87.)  Plaintiff's application was denied initially and upon reconsideration.  (Tr. at 25-31; 35-38).  A hearing, at which Plaintiff personally appeared and testified, was held on August 25, 2003.  (Tr. at 352-73).  On November 18, 2003, the ALJ issued his decision finding Plaintiff not disabled.  (Tr. at 10-22.)  The Appeals Council denied Plaintiff's request for review, concluding that the contentions raised in Plaintiff's request for review did not provide a basis for changing the ALJ's decision.  (Tr. at 4-6.)  Plaintiff then brought this timely appeal to the United States District Court pursuant to 42 U.S.C. § 405(g).

**B.**      ***Factual History***

1.      Age, Education, and Work Experience

Plaintiff was born on February 9, 1964.  (Tr. at 357.)  He graduated high school.  *Id.*  His past relevant work experience included employment as an assistant manager at a restaurant, an order puller, a forklift operator, and a bailer.  (Tr. at 359-60.)  At the time of the hearing, Plaintiff worked part-time as a home health aide.  (Tr. at 358.)

2.      Medical Evidence

On June 7, 2001, Plaintiff was treated by Vannoy S. Cole, M.D. at the K Clinic after an automobile accident on June 5, 2001.  (Tr. at 119-20.)  Plaintiff complained of pain in his neck and upper back.  (Tr. at 119.)  He claimed he had no prior history of injuries or hospitalizations.  *Id.* Examination revealed that Plaintiff's cervical range of motion was decreased by five to ten percent, thoracic rotation was by decreased ten to fifteen percent, and lumbar range of motion was decreased by thirty-five percent in all motions.  *Id.*  Bilateral straight leg raising was seventy-five degrees with

positive back pain bilaterally.  Dr. Cole noted pain on palpation of the left sternocleidomastoid muscle and trapezius muscles.  *Id.*  Deep tendon reflexes in the upper and lower extremities were 1-2+/4+.  *Id.*  Plaintiff's gait and heel-to-toe walking was within normal limits.  *Id.*  Dr. Cole's preliminary diagnoses were cervical strain, thoracic strain, and lumbar strain.  (Tr. at 120.)  Plaintiff was prescribed Tylenol 3 and Flexeril.  *Id.*

On June 12, 2001, Plaintiff was treated by Mark Rayshell, D.C. at Accident & Injury Chiropractic for injuries sustained in an automobile accident on June 8, 2001.  (Tr. at 253.)  Plaintiff reported having been in two prior accidents, including the June 5, 2001 accident.  *Id.*  Plaintiff complained of neck pain and upper and lower back pain.  (Tr. at 253-54.)  He also complained of difficulty sleeping and weakness.  (Tr. at 254.)  Examination of the cervical spine indicated foraminal encroachment, bilateral shoulder pain, possible nerve root compression, and possible tearing of the connective tissues.  *Id.*  Examination of the thoracic and lumbar spine indicated a herniated disc in the lumbar spine and a sprain/strain in the lumbar spine.  (Tr. at 255.)  Straight leg raising was positive for low back pain.  *Id.*  Plaintiff was able to heel and toe walk.  *Id.*  Muscle strength was +5 bilaterally and reflexes were +2 bilaterally.  *Id.*  An MRI of the spine showed that the normal lordotic curve was mildly reduced overall but that invertebral disc spaces and vertebral body heights were maintained.  (Tr. at 258-59.)  There was mild restriction of lower cervical flexion and upper cervical extension.  (Tr. at 258.)

Plaintiff was examined by Marlon D. Padilla, M.D. on June 14, 2001, for the injuries sustained in the June 8, 2001 accident.  (Tr. at 261-63.)  Plaintiff complained of neck and back pain. (Tr. at 261.)  Plaintiff had decreased cervical range of motion but normal thoracic and lumbar range of motion.  (Tr. at 262.)  Straight leg raises were normal bilaterally.  *Id.* Dr. Padilla's impression was

that Plaintiff suffered cervical, thoracic, and lumbar strain/sprain.  (Tr. at 263.)

On February 25, 2002, Plaintiff was examined by a consultative examiner, Ingrid Zasterova, M.D.  (Tr. at 324-26.)  Plaintiff complained of shoulder, neck, and back pain from the two June 2001 car accidents.  (Tr. at 324.)  Plaintiff stated that he was not receiving any medical care for his injuries due to "insurance confusion."  *Id*.  His daily activities were limited to sitting around the house and doing light housework.  *Id*.  Plaintiff used a wheelchair which he purchased from a pawn shop.  *Id*.  Plaintiff complained of pain in his neck, shoulders, and lower back radiating to the right hip. *Id*.  Plaintiff's pain was aggravated by cold weather and prolonged sitting, standing, or walking. *Id*.  Plaintiff also complained of stool and urine incontinence since the accidents.  *Id*.  Plaintiff took Advil or Motrin for his pain.  *Id*.  Although Plaintiff went to the exam in a wheelchair, he was able to get out of the wheelchair on his own and ambulate without any assistive devices. (Tr. at 325.) Examination of Plaintiff's back revealed normal curvature, complete range of motion in all planes, and no palpatory tenderness.  *Id*.  Plaintiff had free range of motion in all joints, including his shoulders, hips, and knees.  *Id*.  Muscle strength was 5/5 in all extremities and grip was 5/5 in both hands.  *Id*.  Plaintiff easily got on and off of the examining table.  *Id*.  His gait and station were normal and he could walk on toes, heels, and in tandem.  *Id*.  Plaintiff could squat completely and raise himself up unaided.  *Id*.  Straight leg raising was negative.  *Id*.  Dr. Zasterova ordered x-rays of Plaintiff's right shoulder, cervical spine, and lumbar spine.  (Tr. at 326.) Those tests were normal. *Id*.  Dr. Zasterova noted Plaintiff's complaints of pain but found no pathology on examination.  *Id*. She opined that Plaintiff retained the ability to sit for more than two hours, stand for one to two hours, walk a mile, lift five to thirty pounds, and handle objects with fine finger control.  *Id*.

On May 2, 2002, Plaintiff was again involved in an automobile accident.  (Tr. at 317.)

-4-

Plaintiff was examined by Ramesh Sanghani, D.C. at Accident & Injury Chiropractic. *Id.* Plaintiff complained of neck pain, shoulder/trapezius pain, and back pain. *Id.* Plaintiff denied any significant history of similar problems and claimed that he enjoyed good health prior to the May 2, 2002 accident. *Id.* Plaintiff exhibited localized pain upon palpation. (Tr. at 318.) Straight leg raising produced low back pain at ninety degrees bilaterally. (Tr. at 319.) Joint restriction and capsular swelling was noted in multiple sites throughout the cervical, thoracic, and lumbar spine. *Id.* Muscle strength was +5 bilaterally. *Id.* Studies of Plaintiff's cervical spine, thoracic spine, and lumbar spine were also taken on May 2, 2002. (Tr. at 129-30.) Plaintiff's cervical spine showed slight reversal of the mid-cervical lordosis, apexing at C4-C5. (Tr. at 129.) Intervertebral disc spaces and vertebral body heights were within normal limits. *Id.* Cervical flexion was within normal limits but extension was mildly reduced in the upper cervical spine. *Id.* The impression as to Plaintiff's cervical spine was postural alterations and mild restriction of upper cervical extension. *Id.* The study of Plaintiff's thoracic spine was unremarkable. *Id.* Plaintiff's lumbar spine showed mildly reduced lordotic curve but no other abnormalities. (Tr. at 130.)

Plaintiff was examined by Douglas M. Wood, D.O., Ph.D. on May 9, 2002, for injuries sustained in the May 2, 2002 accident. (Tr. at 151-54.) Plaintiff reported neck, mid-back, and low back pain, as well as whiplash. (Tr. at 151.) Cervical and lumbar range of motion were decreased by ten percent with moderate pain. (Tr. at 152.) Thoracic range of motion was full with moderate pain. *Id.* Muscle spasm, midline tenderness, and trigger points were noted in all areas of Plaintiff's spine. *Id.* Straight leg raises were negative bilaterally. *Id.* Plaintiff ambulated with a balanced and symmetrical gait. (Tr. at 153.) Dr. Wood's impression was that Plaintiff suffered cervical, thoracic, and lumbar strain. *Id.* Plaintiff was prescribed Hydrocodone and Flexeril. *Id.*

On April 1, 2003, Plaintiff was seen at the emergency room at Baylor University Medical Center for injuries sustained in an automobile accident on that date.  (Tr. at 339.)  Plaintiff complained of neck and back pain.  (Tr. at 341.)  X-rays of Plaintiff's cervical, thoracic, and lumbar spine were within normal limits.  (Tr. at 342.)

Another consultative examination was performed on April 24, 2003, by Arlan P. Larson, M.D.  (Tr. at 327-33.)  Plaintiff complained of pain in his neck and lower back.  (Tr. at 327.)  Plaintiff stated that his pain was continual and affected his sleep.  *Id.*  Plaintiff reported being in a car accident on December 18, 1998, which caused constant neck pain.  *Id.*  Plaintiff reported additional accidents on May 2, 2002, and April 1, 2003.  *Id.*  Plaintiff stated that he kept a wheelchair at home to help him endure the pain of standing and walking when he needed to go visiting.  *Id.*  Plaintiff's daily activities included exercising, sitting or laying down, and watching television.  *Id.*  Examination revealed that Plaintiff had a normal gait and could walk on his toes and heels, could tandem walk, and could hop.  (Tr. at 328.)  Plaintiff could squat and rise from the squat. *Id.*  He was able to bend over ninety degrees and touch his toes.  *Id.*  Plaintiff exhibited good arm strength bilaterally.  *Id.*  X-rays of the lumbar spine showed normal bone architecture and alignment. *Id.*  Disc spaces appeared normal and there was a normal amount of lordosis.  *Id.*  Dr. Larson assessed Plaintiff as having chronic strain of the cervical spine manifested chiefly by pain in the neck and right arm and lumbar strain.  (Tr.  at 329.)  Dr. Larson opined that Plaintiff could occasionally carry twenty pounds and frequently carry ten pounds.  (Tr. at 332.)  He believed that Plaintiff could stand and/or walk for at least two hours and sit less than six hours in an eight hour workday.  *Id.*  Dr. Larson limited Plaintiff to occasional climbing, balancing, stooping, crouching, kneeling, and crawling.  (Tr. at 333.)

3.      Hearing Testimony

At the hearing on August 25, 2003, the ALJ heard testimony from Plaintiff and a Vocational Expert ("VE"). (Tr. at 352-73.) Plaintiff was not represented by counsel at the hearing. (Tr. at 354.) Plaintiff was informed of his right to be represented at the hearing but elected to proceed without representation. (Tr. at 354-55.)

Plaintiff testified that he was thirty-eight years old. (Tr. at 357.) He lived alone in a second floor apartment. *Id.* Plaintiff graduated from high school. *Id.* At the time of the hearing, Plaintiff was working as a home health aide for four hours a day, five days per week. (Tr. at 358.) He had been working at that job for five weeks. *Id.* Plaintiff testified that he believed he could work in his current job on a full-time basis if there was no heavy lifting involved. His job involved cleaning the house and cooking breakfast or lunch for the patient, and these activities did not cause him to strain himself. (Tr. at 360-61.)

Previously, Plaintiff had worked as an assistant manger at a fast food restaurant. (Tr. at 359.) Plaintiff also had experience as a forklift operator and as a bailer. (Tr. at 359-60.)

Plaintiff testified that in the afternoons he did his back exercises and watched television. (Tr. at 362.) He believed that he could sit for twenty to thirty minutes before needing to move around. *Id.* Plaintiff stated that when he stood too long his feet began to throb and his shoulder felt heavy. (Tr. at 362-63.) He believed that he could walk for twenty to thirty minutes. (Tr. at 363.) He could lift ten to twenty pounds but could not carry it elsewhere. (Tr. at 363-64.) Plaintiff stated that he could go up stairs but that he needed to pull himself by the handrail. (Tr. at 364.) Plaintiff complained of back pain when squatting and problems with balance when walking on his toes or heels. *Id.* Plaintiff stated that his pain was generally constant but that it became worse with heavy

lifting.  (Tr. at 365.)  Plaintiff's pain was helped by medication, heating pads, and ice packs.  (Tr. at 366.)

The VE described Plaintiff's past relevant work as that of a short order clerk, district truck operator, and sealing machine operator.  (Tr. at 369.)  She described Plaintiff's current job as that of home care attendant.  (Tr. at 370.)  When asked to respond to a hypothetical question which assumed an individual of Plaintiff's age, education, and work experience, who had the residual functional capacity to stand or walk for a half-hour at a time and for at least two hours in an eight-hour workday, sit for one hour at a time and six hours in an eight-hour workday, occasionally climb, balance, and stoop, and reach overhead frequently, the VE opined that Plaintiff would not be able to perform any of his past relevant work.  *Id.*  The VE also opined that Plaintiff could not perform his current job as it was performed in the national economy.  (Tr. at 371.)  The VE was next asked to assume a hypothetical individual of Plaintiff's age, education, and work experience, who retained the ability to

> lift or carry 20 pounds occasionally and 10 pounds frequently, to stand or walk for one hour at a time in a total of a two or three hours in a eight hour work day, that is occasionally.  And to sit for one hour at a time in a total of six hours in an eight-hour work day, and frequently to reach overhead with his right upper extremity.

(Tr. at 371.)  The VE opined that such an individual could perform the jobs of small product assembler, inspector/packer, and cafeteria cashier.  (Tr. at 371-72.)

### C.    ALJ's Findings

The ALJ issued his decision denying benefits on November 18, 2003.  (Tr. at 10-22).  In his findings, the ALJ stated that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of his symptoms.  (Tr. at 15.)  The ALJ found that Plaintiff's strain of the cervical spine and strain of the lumbar spine were severe impairments.  (Tr. at 18.)  However, the ALJ concluded

that none of his impairments met or equaled the criteria of any of the listed impairments.  *Id.*  The

ALJ found that Plaintiff's testimony concerning the severity of his impairments and the limitations

imposed by them was not credible.  *Id.*  The ALJ noted that Plaintiff's allegation of disabling pain

in his back and shoulders was not supported by the objective medical evidence.  *Id.*  Additionally,

the ALJ cited to Plaintiff's statement that he would be able to perform the job of home health aide

full time and the fact that Plaintiff's claimed date of disability was almost two months prior to the

date of the allegedly disabling accident.  *Id.*  The ALJ concluded that Plaintiff retained the residual

functional capacity ("RFC") to perform a limited range of light work.  Plaintiff could lift and/or

carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for one-half hour

at a time and for a total of three hours in an eight-hour workday, sit for one hour at a time and for

a total of at least six hours in an eight-hour workday, occasionally climb, balance, stoup, crouch,

kneel, or crawl, and frequently reach with his right upper extremity.  *Id*.  The ALJ found that

Plaintiff could not perform his past relevant work.  (Tr. at 19.)  However, the ALJ concluded that

Plaintiff could perform a number of jobs available in the national and state economies including

packing inspector, small products assembler, and cafeteria cashier.  (Tr. 20.)  Accordingly, the ALJ

found that Plaintiff was not entitled to receive disability benefits.  *Id*.

## II.   ANALYSIS

### A.   *Legal Standards*

#### 1.   *Standard of Review*

Judicial review of the Commissioner's denial of benefits is limited to whether the

Commissioner's position is supported by substantial evidence and whether the Commissioner

applied proper legal standards in evaluating the evidence.  *Greenspan v. Shalala*, 38 F.3d 232, 236

(5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-344 (5th Cir. 1988).

### 2. *Disability Determination*

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step analysis to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3.    An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4.    If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5.    If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability.

*Leggett*, 67 F.3d at 564.  The analysis terminates if the Commissioner determines at any point during

the first four steps that the claimant is disabled or is not disabled.  *Id.*  Once the claimant satisfies

his or her burden under the first four steps, the burden shifts to the Commissioner at step five to

show that there is other gainful employment available in the national economy that the claimant is

capable of performing.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  This burden may

be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert

vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir.

1987).  A finding that a claimant is not disabled at any point in the five-step review is conclusive

and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B.    Issues for Review**

Plaintiff alleges that substantial evidence does not support the Commissioner's

finding that he was not disabled because:

(1)    The ALJ erred in finding Plaintiff's testimony not credible or supported by objective medical evidence;

(2)    The ALJ erred in failing to include Plaintiff's deficiencies of concentration, persistence, or pace in the hypothetical question posed to the Vocational Expert; and

(3)    The ALJ erred in considering Plaintiff's employment at the time of the hearing when finding that Plaintiff could perform substantial gainful activity.

**C.    Issue One: Credibility Assessment**

Plaintiff asserts that the ALJ erred in finding his testimony concerning his impairments and limitations not credible.  (Pl.'s Br. at 3.)  Plaintiff notes that the effects of all his impairments should have been considered.  *Id.*

"Credibility determinations are generally the province of the ALJ and are entitled to deference."  *Lam v. Apfel*, 2000 WL 354393, *4 (N.D. Tex. Apr. 5, 2000).  Therefore, courts will reverse an ALJ's credibility determination only if it is "patently wrong."  *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003).  Social Security regulations instruct ALJs to conduct a seven-factor analysis when determining the credibility of a claimant's subjective complaints of pain.  20 C.F.R. § 404.1529(c)(3).  Those factors are: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than medication received; (6) other measures used to relieve symptoms; and (7) other factors concerning functional limitations and restrictions.  *Id.*  The ALJ's "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p.  "If on [42 U.S.C.] § 405(g) review the court finds that the ALJ followed the proper procedures and considered the relevant factors, the ALJ's determination is ordinarily conclusive."  *Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1027 (E.D. Wis. 2004).  However, "since substantive regulations have the force and effect of law, failure to employ the seven-factor analysis when assessing credibility of subjective

complaints constitutes legal error." *Parker v. Barnhart*, 431 F. Supp. 2d 665, 672 (E.D. Tex. 2006).

"Such an error warrants a reversal unless harmless error analysis indicates that 'remand would be

an idle and useless formality.'" *Id.* (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6

(1969)).

In this case, the ALJ provided specific reasons for his finding that Plaintiff's allegations of

work-precluding pain were not fully credible.  He noted that Plaintiff's allegation of constant sharp

disabling pain in his back and shoulders was not supported by any objective medical evidence.  (Tr.

at 18.)  He noted Plaintiff's statement at the hearing that he would be able to perform his current job

of home health aide full time.  *Id.*  Additionally, he noted that Plaintiff's claimed date of disability

was inconsistent with the date he suffered the allegedly disabling accident.  *Id.*  The ALJ noted that

Plaintiff provided no explanation for why he discontinued working on April 10, 2001, his claimed

date of disability.  *Id.*  Because the ALJ supplied reasons for his credibility determination as to

Plaintiff's complaints of physical pain, the Court cannot find that the determination was patently

wrong.

Although Plaintiff's brief mentions the requirement that the ALJ consider the cumulative

effects of all Plaintiff's impairments in making a disability determination, Plaintiff does not explain

how he believes that the ALJ erred in this respect.  (Pl.'s Br. at 3.)  The Court has thoroughly

reviewed the record in its entirety and finds that the ALJ did set forth all of the limitations imposed

by Plaintiff's impairments in his determination.

For these reasons, the Court concludes that substantial evidence supports the ALJ's

credibility determination.

**D.**     *Issue Two: Hypothetical Question*

Plaintiff claims the ALJ erred in failing to include his "frequent deficiencies of concentration, persistence, or pace" in his hypothetical question to the VE.  (Pl.'s Br. at 3.)

The ALJ has a duty to fully and fairly develop the facts relevant to a claim for benefits. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000).  Failure to develop an adequate record is not per se grounds for reversal.  *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984).  Plaintiff must show that Plaintiff "could and would have adduced evidence that might have altered the result."  *Id.*  To establish that work exists for a claimant, the ALJ relies on the medical-vocational guidelines or the testimony of a VE in response to a hypothetical question.  *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).  A hypothetical question posed by an ALJ to a VE must reasonably incorporate all the claimant's disabilities recognized by the ALJ and the claimant must be afforded a fair opportunity to correct any deficiencies in the hypothetical question.  *Bowling*, 36 F.3d at 436.  A claimant's failure to point out deficiencies in a hypothetical question does not "automatically salvage that hypothetical as a proper basis for a determination of non-disability."  *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001).  If, in making a disability determination, the ALJ relied on testimony elicited by a defective hypothetical question, the ALJ did not carry his burden of proof to show that despite his impairment the claimant could perform available work.  *Id.* at 708.

In this case, the ALJ's hypothetical question to the VE set forth Plaintiff's exertional limitations but did not include any nonexertional limitations.  Although Plaintiff's brief states that he has frequent deficiencies in concentration, persistence, and pace, he has not pointed the Court to any evidence in the record supporting that claim.  Nor does he allege that the ALJ recognized such a limitation.  Because the ALJ did not recognize any nonexertional limitation and because there is

14

no evidence in the record that Plaintiff had nonexertional limitations, the hypothetical question posed to the VE was not in error.

**E.      Issue Three: Current Employment**

Plaintiff claims that the ALJ erred by taking into account Plaintiff's employment as a home health aide when making his disability decision.  (Pl.'s Br. at 3.)

Any work performed by a claimant during a period in which the claimant alleges disability, may show that the claimant is able to work at the substantial gainful activity level.  20 C.F.R. § 404.1571.  Even if the work performed was not substantial gainful activity, it may show that the claimant is able to perform more work than was actually done.  *Id.*  "Present levels of work activity may show that a claimant is able to do more work than he or she is actually doing."  *Zenker v. Bowen*, 872 F.2d 268, 270 (8th Cir. 1989) (affirming the ALJ's finding that the plaintiff's ability to work twenty hours a week and to perform satisfactorily indicated that he could engage in substantial gainful activity) (citing 20 C.F.R. § 404.1571).

Although the ALJ noted the fact that Plaintiff was working part-time at the time of the hearing, that fact was not dispositive of Plaintiff's disability claim.  Rather, the ALJ relied upon the medical evidence submitted by Plaintiff and the opinions of the consultative examiners as to Plaintiff's ability to perform work-related activities.   (Tr. at 16, 17, 18.)  Additionally, the ALJ noted that fact that there was no objective medical evidence supporting Plaintiff's allegations of disabling pain and that Plaintiff testified that he believed he could work full-time.  (Tr. at 18.) Because the fact of Plaintiff's part-time employment was relevant to the disability determination, the ALJ did not err in noting it.  *See* 20 C.F.R. § 404.1571.  However, the ALJ relied upon other evidence in making his disability determination and substantial evidence in the record supports the

ALJ's conclusion.

## III.   RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that the final decision of the

Commissioner be **AFFIRMED**.

**SO RECOMMENDED**, on this 15th day of March, 2007.


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992).  Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE